— FOR PUBLICATION —

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CITIZENS INSURANCE COMPANY OF AMERICA,**<br>                    Plaintiff,<br><br>        v.<br><br>**SELECTIVE WAY INSURANCE COMPANY,**<br>                    Defendant. | **CIVIL ACTION**<br><br>**NO. 14-6232** |

## MEMORANDUM OPINION

This action involves a dispute between two insurers over which has the duty to defend general contractor Michael & Karen Palmieri Enterprises, Inc. d/b/a Lynmar Builders ("Lynmar") in personal injury litigation pending in a Pennsylvania state court and over the costs incurred in defending that litigation to date. Plaintiff, Citizens Insurance Company of America ("Citizens")—Lynmar's insurer—is seeking judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), that Defendant, Selective Way Insurance Company ("Selective")—which insured one of Lynmar's subcontractors—owes a duty to defend the general contractor in the tort action. For the reasons set out below, the motion will be denied.

**I.    BACKGROUND**

On November 19, 2009, Lynmar contracted to perform construction work at a Save-A-Lot store located at 5601 Vine Street in Philadelphia, Pennsylvania. Compl. ¶ 11. Lynmar subcontracted with Integrity Plumbing & Heating ("Integrity") to perform a portion of the construction work. *Id*. ¶ 12. The parties' pleadings do not state when Integrity completed its work on the project. However, Selective has alleged in its Answer that "Integrity's ongoing

operations performed for Lynmar [did not] cause[] the bodily injury" at issue in the state court personal injury litigation.  Answer at 6 (Eighth Affirmative Defense).[1]

That injury occurred on May 12, 2010, when an employee of Sav-A-Lot, Robert Tomlinson, allegedly "fell through an unidentified, unmarked and unguarded drop ceiling and/or floor in the vicinity of [the area in which Integrity performed its work] which appeared to be a floor," and sustained serious injuries.  Compl. Ex. A ¶¶ 5, 30-31.  Tomlinson filed suit in the Court of Common Pleas of Philadelphia County against, among others, Lynmar and Integrity (the "*Tomlinson*" action).  In his complaint, Tomlinson alleges, *inter alia*, that the defendants were negligent in "failing to ensure adequate handrails and/or guardrails existed on the Premises," and in "failing to take proper measures to warn or guard the location of the accident."  *Id*. Ex. A ¶¶ 66(n), (q).

Integrity is insured under a commercial general liability policy issued by the Defendant here, Selective (the "Policy").  Compl. ¶ 18.  The Policy also insures as additional insureds any party who Integrity agrees to indemnify in one of its construction contracts.  *Id*. Ex. A at 11.  Integrity's subcontract with Lynmar requires Integrity to indemnify Lynmar with respect to liability arising from Integrity's work and required that Lynmar be added to the Policy as an additional insured.  *Id*. ¶¶ 15-16.  Lynmar complied with those requirements.  *See id*. ¶¶ 15-19.  The provision of the Policy that extends coverage to Lynmar only extends that coverage for liability that is "caused in whole or in part by . . . [Integrity's] ***ongoing operations*** performed for [the indemnified party]."  *Id*. Ex. C at 11 (emphasis added).  The policy also provides Integrity

---

[1] For the purposes of the present Rule 12(c) motion, the Court will consider, in addition to the pleadings, the Policy, the subcontract between Lynmar and Integrity and the complaint filed in the underlying *Tomlinson* action.  Each of those documents is attached to the Complaint in this action and is "'integral to or explicitly relied upon in the complaint.'"  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)) (emphasis removed).

2

with coverage for injuries arising out of its own operations that already have been completed, called "completed operations" coverage. Opp'n Ex. D at 23.[2] It does not, however, extend completed operations coverage to additional insureds, like Lynmar; they are covered only for injuries caused by ongoing operations. *Compare* Compl. Ex. C at 11, *with* Opp'n Ex. D at 23. Citizens contends that Tomlinson's injury "was caused . . . by [Integrity's] ongoing operations performed for [Lynmar], Compl. Ex. C at 11, and that Lynmar, therefore, is covered for the injury. Mot. at 10-11. Selective contends that the injury occurred "when all of the work in [Integrity's] contracts [with Lynmar] ha[d] been completed," Opp'n Ex. D at 23, that Lynmar is covered only for injuries caused by Integrity's ongoing operations and that Lynmar, therefore, is not covered for the injury. Opp'n at 12-13.

Lynmar tendered its defense of the *Tomlinson* Court of Common Pleas action to Selective. Compl. ¶ 19. Selective, however, did not accept that tender. *Id.* ¶ 20; Answer ¶ 20. As a result, Citizens, as Lynmar's insurer, has defended Lynmar in the *Tomlinson* action. Compl. ¶ 23.

## II.  ANALYSIS

On a motion for judgment on the pleadings, "'judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Jablonski v. Pan Am. World Airways, Inc.,* 863 F.2d 289, 290-91 (3d Cir. 1988)). In deciding the motion, the court must "'view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party.'" *Id.*

---

[2]  The term "completed operations" is defined to include "all 'bodily injury . . . arising out of . . . 'your work' except . . . work that has not been completed or abandoned." Opp'n Ex. D at 23. Work is "deemed completed" at the earlier of "when all of the work called for in your contracts has been completed" or when the work "has been put to its intended use by any person or organization other than another contractor or contractor working on the same project." *Id*.

3

This motion raises two primary issues: (1) whether Selective has a duty to defend Lynmar in response to the allegations regarding negligent construction stated in the *Tomlinson* complaint; and, (2) whether Selective has a duty to defend Lynmar in response to the *Tomlinson* complaint's failure to warn allegations. The parties dispute whether Pennsylvania or New Jersey law governs those issues. As an initial matter, the Court will address the choice-of-law issue.

A.   *Choice of Law*

As the forum state, Pennsylvania choice-of-law rules apply to this action. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226 (3d Cir. 2007). Under those rules, a court must "assess[] each state's contacts under the Second Restatement of Conflict[] of Laws, bearing in mind that '[w]e are concerned with the contract of insurance' and not the underlying tort." *Id*. at 232-33 (quoting *McCabe v. Prudential Prop. & Cas. Ins. Co.*, 514 A.2d 582, 586 (Pa. Super. Ct. 1986)). "Section 193 of the Second Restatement specifically governs casualty insurance contracts, and provides that the" interpretation of a casualty insurance contract is "'determined by the local law of the state which the parties understood to be the principal location of the insured risk during the term of the policy unless . . . some other state has a more significant relationship . . . to the transaction and the parties . . . .'" *Id*. at 233 (quoting *Restatement (Second) of Conflict of Laws* § 193). Comment b to section 193 states that courts generally should give the location of the insured risk "greater weight than any other single contact." *Id*. (quoting *Restatement (Second) of Conflict of Laws* § 193 cmt. b).

Both Lynmar and Integrity are New Jersey companies. Compl. Ex. B at 1-2. Selective issued the policy from its office in Branchville, New Jersey. *Id*. Ex. C at 2. The contract between the two New Jersey construction companies called for work to be performed in Pennsylvania. *Id*. Ex. B at 2. For the insurance policy in question here, issued by a New Jersey insurer to a New Jersey insured and extended to a New Jersey additional insured, the location of

4

the insured risk is New Jersey and, thus, New Jersey law applies. *See Hammersmith*, 480 F.3d at 232-35.

This conclusion is reinforced by an analysis of the additional *Hammersmith* factors: "(1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Id*. at 233 (citing *Restatement (Second) of Conflict of Laws § 188(2)*).[3] The place of contracting for an insurance policy is the state where it is delivered. *Id*. Here, the Policy reflects that it was issued from Selective's New Jersey office to Integrity's New Jersey office. Compl. Ex. C at 2. Given the location of the parties' respective offices, and absent any allegations to the contrary, it is reasonable to conclude that New Jersey is the place where the negotiations over the policy occurred and the place where the subject matter of the insurance policy is located. The place of performance refers to the place of performance of the insurance contract and not that of the construction work, *Hammersmith*, 480 F.3d at 232-33,[4] which, here, are the offices of the contracting parties in New Jersey. The record contains no evidence to suggest that the parties have any other domicile, residence, place of incorporation or place of business than their listed offices in New Jersey. Thus, based on consideration of all of the relevant factors, New Jersey law governs the interpretation of the Policy.

---

[3] Citizens points in its choice of law argument to factors such as that the injury occurred in Pennsylvania to a Pennsylvanian who filed the underlying tort action in Pennsylvania. Those are not the relevant considerations for determining choice of law regarding contract interpretation. *Hammersmith*, 480 F.3d at 232-33.

[4] The fact the project site at which Tomlinson was injured is in Pennsylvania does not require a different result. "Section 193 clearly reflects a 'preference that only one set of laws governs a given insurance contract, and a disapproval of the possibility that the laws of different jurisdictions might apply to different risks under the policy.'" *Id*. at 233 (quoting *United Brass Works, Inc. v. Am. Guar. Liab. Ins. Co.*, 819 F. Supp. 465, 469 (W.D. Pa. 1992)).

B.     *Whether, Under New Jersey Law, Citizens Is Entitled to Judgment on the Pleadings that Selective Owes a Duty to Defend the Allegations of Negligent Construction Made Against Lynmar in the* **Tomlinson** *Action*

New Jersey recognizes the general rule that a liability insurer is obligated to defend whenever the complaint against the policyholder contains allegations that, if proven true, would be covered under the policy. *Burd v. Sussex Mut. Ins. Co.*, 267 A.2d 7, 9 (N.J. 1970). The duty to defend exists even if the claim against the policyholder is completely without merit, so long as, if the claim pleaded in the action against the policyholder were to be proven valid, it would be covered by the policy. This is because to rule otherwise would deprive the policyholder of "'one of the basic purposes'" of obtaining liability insurance—"'protection of the insured from the expenses of litigation.'" *Vorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1259 (N.J. 1992) (quoting *Solo Cup Co. v. Fed. Ins. Co.*, 619 F.2d 1178, 1185 (7th Cir. 1980)). An insurer is not required, however, to provide a defense to a lawsuit alleging claims that, even if they were proven true, would not fall within the insurer's policy. *Hartford Acc. & Indem. Co. v. Aetna Life & Cas. Co.*, 483 A.2d 402, 405 (N.J. 1984); *Burd*, 267 A.2d at 9. When the insurer believes that the claim would not be covered even if proven, the insurer "may deny coverage and await a judicial resolution." *Polarome Int'l., Inc. v. Greenwich Ins. Co.*, 961 A.2d 29, 48 (N.J. Super. Ct. App. Div. 2008).

Sometimes, however, the issue that determines whether a claim is covered will not be resolved in the litigation against the policyholder. When that is the case, an insurer may bring a declaratory judgment action, like the one here, to determine whether it is obligated to cover the policyholder. *Burd*, 267 A.2d at 11. In such an action, the insurer is not limited to the facts pleaded in the complaint against the policyholder, but may introduce evidence to show that the claim against the policyholder is not covered by its policy. *See Polarome*, 961 A.2d at 48 (stating that insurer may introduce extrinsic evidence to show claim is not covered); *see also*

*Burd*, 267 A.2d at 14 (stating that the carrier was entitled to try the issue of whether the injuries in fact were within the policy exclusion for intentional acts).

Thus, in *Burd*, the complaint in the underlying personal injury action contained separate counts alleging alternatively that the insured intentionally shot the plaintiff and that he did so negligently. *Burd*, 267 A.2d at 9. The issue whether the shooting was negligent or intentional was not resolved in the personal injury action, *id.*, but it was critical to whether the insurer had a duty to defend. Accordingly, in a subsequent action seeking a declaration that the insurer owed coverage, the insurer was not limited to the terms of the personal injury complaint against its policyholder but was entitled to show that the shooting actually was intentional and, therefore, not covered by its policy. *See id.* at 9-11.

Here, Selective argues that it has no duty to defend Lynmar in *Tomlinson* because the injury Mr. Tomlinson alleges was not caused by Integrity's ongoing operations but happened after Integrity had completed operations at the site. The issue whether Mr. Tomlinson's injury was caused by Integrity's ongoing operations is not relevant to his tort claim and will not be resolved in the state court action. Thus, in this declaratory judgment action, Selective will be entitled to introduce evidence in a summary judgment motion or at trial to show when the injury occurred in relation to the completion of Integrity's operations. *Polarome*, 961 A.2d at 48; *see also Burd*, 267 A.2d at 11. The present motion, however, is under Rule 12(c), and for the purposes of this motion, only the factual allegations contained in the pleadings in this action, as well as certain documents "integral to or explicitly relied upon in the complaint," may be considered. *U.S. Express Lines Ltd.*, 281 F.3d at 388 (citation and internal quotation marks omitted); *see also supra* note 1. It is Citizens' burden on this motion to show that those

allegations reflect that there exists no issue of material fact and that it is entitled to judgment as a matter of law. *Rosenau*, 539 F.3d at 221.

A review of the pleadings shows that there is an issue of material fact that remains to be resolved. That issue arises from the parties' dispute over whether Tomlinson's injuries were caused by Integrity's ongoing operations. Mot. at 9; Opp'n at 12-13.[5] New Jersey courts view the distinction between ongoing operations and completed operations as:

> a limitation on coverage for liability based on the date of the damage. There is coverage for property damage occurring before the work was completed and the construction project was put to use, but not for property damage that occurs thereafter. These exclusions [for completed operations] incorporate the general rule that comports with common understanding—"the time of the occurrence of an accident within the meaning of an indemnity policy is not the time the wrongful act is committed but the time when the complaining party is actually damaged.

*E. Coast Residential Assocs., LLC v. Builders Firstsource-Ne. Grp., LLC*, 2012 WL 75146, at *3 (N.J. Super. Ct. App. Div. Jan. 11, 2012) (quoting *Owens-Ill. Inc. v. United Ins. Co.*, 650 A.2d 974, 981 (N.J. 1994)); *accord Deodato v. Hartford Ins. Co.*, 363 A.2d 361, 402 (N.J. Super. Ct. Law Div. 1976), *aff'd*, 381 A.2d 354 (N.J. Super. Ct. App. Div. 1977) (per curiam).

The parties are at odds as to whether Mr. Tomlinson's injuries happened during Integrity's "ongoing operations." Citizens' points to Mr. Tomlinson's allegations that the defendants, including Integrity, acted negligently in construction of the area around the water heater from which he fell, Compl. Ex. A ¶¶ 66(n), (q), and concludes from there that his injury occurred during Integrity's ongoing operations. Mot. at 10-11. Selective alleges in its Answer,

---

[5] Citizens also argues, relying entirely on *Selective Ins. Co. v. Lower Providence Township*, No. 12-0800, 2013 WL 3213348 (E.D. Pa. June 26, 2013), that Lynmar could be covered even if the potential liability in *Tomlinson* was not caused by Integrity's ongoing operations. Apart from the fact New Jersey law applies here, *Lower Providence* does not support Selective's argument. In *Lower Providence*, the court held that an injury to a contractor's employee that did occur during the contractor's ongoing operations was covered even though the negligence was that of the party the contractor had agreed to indemnify and not of the contractor itself. *Id.* at *8-9. The court did not address whether an injury occurring after completion of the work was caused by the contractor's ongoing operations. *Id.*

to the contrary; that Integrity's ongoing operations performed for Lynmar did not cause Mr. Tomlinson's injuries.  Answer at 6 (Eighth Affirmative Defense).  Thus, Selective highlights a material question of fact regarding when Tomlinson's injury occurred in relation to when it completed its work.

Given this factual dispute found in the pleadings, the Court concludes that Citizens' has not met its burden to show "that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law." *Rosenau*, 539 F.3d at 221 (citation and internal quotation marks omitted).  As stated above, in addressing a Rule 12(c) motion the Court "view[s] the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id*.  When a nonmoving defendant denies a material allegation in its answer, that denial creates a question of fact that prevents judgment on the pleadings.  *Inst. for Scientific Info., Inc. v. Gordon & Breach, Scientific Publishers, Inc.*, 931 F.2d 1002, 1008 (3d Cir. 1991).   The nonmoving party, Selective, has alleged in its Answer that Integrity's ongoing operations did not cause Tomlinson's injury.  Answer at 6 (Eighth Affirmative Defense).  If the injury was not caused by Integrity's ongoing operations, Lynmar is not entitled to coverage from Selective.  In light of Selective's allegation, Citizens cannot show that there is not at least a question of fact regarding whether Lynmar is entitled to coverage.  That fact question precludes judgment on the pleadings.

### C. Whether, Under New Jersey Law, Citizens Is Entitled to Judgment on the Pleadings that Selective Owes Lynmar a Duty to Defend It Against the Failure to Warn Allegations in Tomlinson

Citizens also argues that the allegations against Integrity in Tomlinson of failure to warn themselves alone impose on Selective a duty to defend Lynmar.  The *Tomlinson* complaint alleges, *inter alia*, that Integrity "faile[d] to warn those lawfully on the Premises of the dangerous conditions existing thereon."  Compl. Ex. A ¶ 66(k).  Citizens relies on Pennsylvania

case law to assert that allegation alleges an injury that is deemed, as a matter of law, to have been caused by ongoing operations regardless that the resultant injury—in this case, the fall—did not occur until after the work had been completed.  Mot. at 11-12 (citing *Bombar v. W. Am. Ins. Co*, 932 A.2d 78, 88-89 (Pa. Super. Ct. 2007); *Keystone Spray Equip., Inc. v. Regis Ins. Co.,* 767 A.2d 572, 575 (Pa. Super. Ct. 2001)).

As discussed above, however, New Jersey law governs the interpretation of the Policy, and it is to the contrary.  Under New Jersey law, liability for a failure to warn that results in injury—like Mr. Tomlinson's fall—after the work has been completed is covered by completed operations coverage and not by coverage for ongoing operations.  *S.T. Hudson Eng'rs, Inc. v. Pa. Nat'l Mut. Cas. Co.*, 909 A.2d 1156, 1164 (N.J. Super. Ct. App. Div. 2006) ("[T]he acts that fall within products-completed operations coverage relate to the giving of information, *i.e.*, instructions and warnings . . . ."); *see also Inductotherm Corp. v. N.J. Mfrs. Cas. Ins. Co.*, 200 A.2d 358, 364 (N.J. Super Ct. Law Div. 1964) ("the allegations . . . arising out of its failure to warn of a danger inherent in the use of its product . . . are not sufficient to remove these claims from the exclusionary clause of the contract of insurance" for products—completed operations coverage).  Thus, if Mr. Tomlinson fell after Integrity had completed its work because Integrity failed to warn him of a danger, that fall would not be caused by Integrity's ongoing operations.  And, if the fall was not caused by Integrity's ongoing operations, liability for failure to warn about the drop ceiling/floor is not covered under the Policy.

Selective has proffered evidence to show that Mr. Tomlinson fell some months after Integrity had completed its work at the site.  Opp'n at 15-16 Exs. A-C.  That evidence consists of: (1) excerpts from Lynmar's summary judgment motion in Tomlinson, *id*. Ex. A ¶¶ 5, 6, 8; (2) excerpts from Integrity's summary judgment motion in *Tomlinson, id*. Ex. B ¶¶ 14, 15; and (3) a

Final Waiver of Lien Form issued by Integrity to Lynmar indicating completion of, and full payment for, the work under the parties' subcontract, *id*. Ex. C. On this Rule 12(c) motion, the Court is unable to consider that evidence because none of those documents are "integral to or explicitly relied upon in the complaint." *U.S. Express Lines*, 281 F.3d at 388 (citation and internal quotation marks omitted). The *Tomlinson* complaint does not clearly state whether the fall happened before or after Integrity completed its operations at the site. Citizens argues that the fall happened during Integrity's operations, *see* Compl. ¶¶ 27-30, while Selective has alleged that it did not, *see* Answer at 6 (Eighth Affirmative Defense). Thus, at this stage in the proceedings, with respect to the failure to warn allegation—just as for the negligent construction allegations—there remains a factual question regarding when Integrity completed its operations in relation to when the fall occurred, which precludes judgment on the pleadings.

For the foregoing reasons, Citizens' Motion will be denied. An appropriate Order follows.

Dated: **April 14, 2015**

**BY THE COURT:**

**/S/WENDY BEETLESTONE, J.**

_____

**WENDY BEETLESTONE, J.**